**DRESSER INDUSTRIES, INC.**

v.

**INSURANCE COMPANY OF NORTH AMERICA.**

**No. CA 3–5059–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 22, 1973.

Robert M. Martin, Jr., Storey, Armstrong & Steger, Dallas, Tex., for plaintiff.

D. L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendant.

WILLIAM A. TAYLOR, Jr., District Judge.

## MEMORANDUM OPINION

Plaintiff, Dresser Industries, Inc. ("Dresser"), seeks a declaratory judgment against Defendant, Insurance Company of North America ("INA"). The source of this controversy is a suit now pending in the 162nd Judicial District Court of Dallas County, Texas, Cause No. 71–3749, styled Doubleday Broadcasting Co., Inc. v. General Electric Co., et al., in which Dresser, plaintiff herein, is a defendant. That lawsuit is one for property damages and loss of profits brought by Doubleday Broadcasting Co. against General Electric, Dresser, and others resulting from the destruction of Doubleday's antenna tower. INA in-

sures Dresser under a general liability insurance contract and INA also insures Doubleday in a similar manner. In this Court Dresser complains that the real party in interest with respect to the property damage in the State Court is not Doubleday Broadcasting Co. but in truth is INA, and, therefore, a breach of fiduciary duty between INA and Dresser has occurred. Dresser reasons as follows: (1) INA is the liability insurer for both Dresser and Doubleday (2) Dresser built an antenna tower for Doubleday which was destroyed (3) INA paid Doubleday for the damage to the tower and now under subrogation rights sues Dresser, INA's own insured, to recover that payment (4) INA attorneys represent both Dresser and Doubleday in the State Court lawsuit which seeks to recover money damages from Dresser (5) Thus, Dresser contends, INA has flagrantly breached its fiduciary duty to Plaintiff Dresser, its assured.

Dresser asks this Court to declare that INA has in fact breached that fiduciary duty and prays for the following: (1) an injunction which will bar INA from suing Dresser in state court, an order which will in effect terminate the state court litigation in its present form,[1] (2) an order terminating the employment of an attorney who was hired by INA to represent INA and Doubleday Broadcasting Co., and in effect by this suit Dresser asks this Court to oversee and supervise a state court case by directing the state court to determine who may sue whom, who may represent the parties, and how the attorneys should represent their clients, etc. This Court declines to sit in this capacity.

A determination of whether an injunction against state court proceedings should issue requires that the Court consider the effect of such an injunction on federal-state relations.[2] Considerations of comity early prompted Congress to provide that federal courts should not enjoin pending state judicial proceedings except in narrowly limited situations. The word "comity" identifies the concept that federal courts, in the exercise of their jurisdiction, should give consideration to the sovereign status of the individual state. Commonly referred to as a "doctrine", comity is more a policy consideration than a rule of law. That policy consideration, however, underlies the rule established by the Supreme Court that federal courts should abstain to avoid needless conflict of federal jurisdiction with the administration by a state of its own affairs. *See* Wright, Federal Courts, § 52 (1970). A sound conception of our federal system requires a federal court to withhold intervention with state procedure in the interest of maintaining harmony within the system. State of California v. Oroville-Wyandotte Irr. Dist., 409 F.2d 532 (9th Cir., 1969). Justice Black reemphasized this idea in the important case of Younger v. Harris, 401

---

1. It must be noted at the outset that the Anti-Injunction Statute, 28 U.S.C.A. § 2283, applies irrespective of whether a federal injunction is directed to the parties or to the State Courts. *See* 1 Barron and Holtzoff, Federal Practice and Procedure (Wright ed.), § 46 (1960).

2. Much has been written on the subject of federal-state relations. *See generally*

Frankfurter, Distribution of Judicial Power Between United States and State Courts, 13 Cornell L.Q. 499 (1928)

Wisdom, The Frictionmaking, Exacerbating Political Role of Federal Courts, 21 Southwestern L.J. 411 (1967)

Kurland, Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine, 42 FRD 481 (1959)

Mariast, Federal Injunctive Relief Against State Court Proceedings: The Significance of Dombrowski, 48 Texas L. Rev. 535 (1970)

NOTE, I Used To Love You But Its All Over Now: Abstention and the Federal Courts, Retreat From Their Role As Primary Guardian Of 1st Amendment Rights, 45 S.Cal.L.Rev. 847 (1972)

Comment: The Abstention Doctrine, Some Recent Developments, 46 Tulane L. Rev. 762 (1972)

C. Wright, Federal Courts, §§ 46–52 (1970).

U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970):

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43, 91 S.Ct. at 750.

Before this Court may enjoin the State Court it must first decide the merits pursuant to the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, and then protect its judgment by staying State Court proceedings that would interfere with this. Court's judgment. This is so because federal courts cannot enjoin state court proceedings except where authorized by the Anti-Injunction Statute, 28 U.S.C.A. § 2283:

A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Moreover, the prohibition against enjoining state court proceedings cannot be avoided by enjoining a party rather than the court, nor by seeking declaratory judgment and an injunction. 1 Barron and Holtzoff (Wright ed.), Federal Practice and Procedure, § 46 (1960).

Additionally, Dresser has applied to this Court for declaratory relief without having first sought relief in the State Court and there is no apparent reason why Dresser could not have sought relief in the State Court in which the above mentioned lawsuit was pending. Indeed, state court judges are just as competent as federal court judges and are no less dedicated to seeking and determining truth and justice than are the federal courts. Judicial sensitivity to questions of breach of fiduciary duty and conflict of interest is not reposed solely in the federal courts. Dresser contends, however, that if its attorneys had intervened in state court then a severance and separate docketing of the case would have occurred and the two lawsuits would have been the unavoidable result. This multiplicity of suits they argue is condemned by the cases construing the Declaratory Judgment Act. This argument completely overlooks the fact that we now have two lawsuits pending, the only difference being that one is in state court and the other in federal court with the latter being asked to oversee and supervise the proceedings in the state court * * * a wholly undesirable result.

▆ Federal courts should refuse to grant declaratory relief where another remedy will be more effective or appropriate under the circumstances. Aetna Casualty & Surety Co. v. Quarles, 92 F. 2d 321 (4th Cir., 1937). Under the circumstances presented here this Court has concluded that other remedies available to Dresser are much more appropriate than seeking federal supervision of a State Court's proceedings.

▆ The object of the Declaratory Judgment Act is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states. Fireman's Insurance Co. of Newark v. Riley, 322 F.Supp. 349 (W. D.Ky.1971). The Act does not add to the jurisdiction of the court; rather, it provides an additional remedy for use in those cases and controversies of which the federal courts already have jurisdiction. It gives the court a choice, not a command. Travelers Indemnity Co. v. Winmill, 294 F.Supp. 394 (D.C.Minn. 1968). Therefore, granting a declaratory judgment rests in the sound discretion of the trial court, and only if a case can be settled most expeditiously in the federal court should the remedy be exercised. Inland Mut. Ins. Co. v. Eastern Motor Lines, Inc., 119 F.Supp. 344 (D. C.S.C.1954); See Barron and Holtzoff (Wright ed.), Federal Practice and Procedure, § 1265 (1958). The determinative factor is whether the action for declaratory relief will result in a just and more expeditious and economical deter-

mination of the entire controversy. 3 Barron and Holtzoff (Wright ed., *supra*, § 1266 (citing cases).

 Dresser may have stated in its complaint in this Court sufficient grounds for relief from the manner in which INA has handled Dresser's business, but the Texas Courts are fully equipped with the procedural tools to grant Dresser the full relief it seeks here without the intervention of this Court. The main case was initially and is now pending in the Texas Court and that is the more appropriate forum for the determination of the questions raised. For a federal court to sit as a supervisory agency over state court litigation only serves to destroy our "cooperative federalism" about which much has been written and said. Therefore, this Court, on its own motion, has concluded that this case should be dismissed and it is, accordingly, so ordered.